UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CURTIS ROWE** and
**MISTY ROWE**,

        Plaintiffs,

vs.

**GFL ENVIRONMENTAL SERVICES USA, INC**
and **GFL ENVIRONMENTAL USA, INC.,**
jointly and severally,

        Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ GOTHAM PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiffs, **CURTIS ROWE** and **MISTY ROWE,** for their Complaint against Defendants GFL Environmental Services USA, Inc. and GFL Environmental USA, Inc., stating the following:

### INTRODUCTION

1. Plaintiffs Curtis and Misty Rowe were employed as truck drivers hauling waste and recycling for Defendants. During Plaintiffs' employment, Defendants habitually requested Plaintiffs drive in excess of the legal time limits pursuant to Federal Motor Carrier Safety Rules. Plaintiffs initially complied with Defendants' illicit wishes out of fear of termination and promises of advancement in the company. However, Plaintiffs eventually took a stand against Defendants and refused to drive beyond their legal time limitations. Instead of cleaning up their act, Defendants continued their illegal ways and accused Plaintiffs of not being team players. Defendants also attempted to coerce Plaintiff Curtis Rowe to illegally doctor his logbooks to cover up illegal driving. Plaintiffs stood firm and refused to continue breaking the law. Their refusal was met with multiple forms of retaliation and ultimately their termination.

Defendants' retaliation against Plaintiffs for their refusal to break the law is a violation of their rights pursuant to the employee protection provisions of the Surface Transportation Assistance Act ("STAA") of 1982, 49 U.S.C. §31105.

## PARTIES

2. Plaintiff Curtis Rowe is an individual who resides in the Eastern District of Michigan, Wayne County.

3. Plaintiff Misty Rowe is an individual who resides in the Eastern District of Michigan, Wayne County.

4. GFL Environmental Services USA, Inc., is a private trucking company located at 6200 Elmridge Dr, Sterling Heights, MI 48313.

5. GFL Environmental USA, Inc., is a private trucking company located at 6200 Elmridge Dr, Sterling Heights, MI 48313.

6. Collectively, Defendants operate a waste hauling and recycling company which operates throughout the United States and Canada.

7. On information and belief all Defendants share employees, resources, and aided and abetted each other.

8. On information and belief, all Defendants have common ownership and are under common control.

9. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

10. Defendants are each liable for the acts and omissions of the other for the following reasons:

    a. They are agents of each other;

    b. They are joint ventures;

    c. They are alter egos of each other;

    d. They are engaged in a civil conspiracy; and/or

    e. They engaged in a concert of action.

## JURISDICITON AND VENUE

11. This Court has jurisdiction under 49 U.S.C. §31105(c) as 210 days have passed since the Plaintiff submitted a complaint with the Occupational Safety and Health Administration ("OSHA")/Secretary of Labor and the Secretary of Labor has not issued a final decision.

12. Any delay in the issuance of a final decision by the Secretary of Labor is not due to bad faith of the Plaintiff.

13. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

14. GFL Environmental Services USA, Inc. and GFL Environmental USA, Inc. (collectively "GFL") are a large-scale waste hauling and recycling company operating all around the United States and Canada.

15. Collectively and/or individually, Defendants are an "employer" as defined in 49 USC §31101(3) and 29 CFR §1978.101(i) of the Surface Transportation Assistance Act ("STAA") of 1982, 49 U.S.C. §31105.

16. At all relevant times, Defendants were subject to the protection provisions of the Surface Transportation Assistance Act, 49 U.S.C. §31105.

17. Plaintiffs Curtis Rowe and Misty Rowe began their employment as refuse truck drivers with GFL in or around April 2017 at the Wayne, MI location.

18. As truck drivers for GFL, Plaintiffs drove refuse trucks weighing greater than 10,001 lbs. These trucks were are "commercial motor vehicles" as defined in 49 U.S.C. §31101(1).

19. The trucking industry is heavily regulated, and its drivers are subject to various mandatory hours of service restrictions, or rest periods, pursuant to Federal Motor Carrier Safety Rules ("FMCSR"). Relevant to this matter, FMCSR states that a driver legally can only drive a total of 11 hours during the 14-hour work shift[1]. *See 49 C.F.R. §395.3.*

20. Curtis Rowe's average workday at GFL involved checking at the depot at or around 6:30 a.m., completing a pre-trip inspection, then heading out to his route in Dearborn Heights, MI.

21. Similar to Curtis, Misty Rowe's average workday at GFL involved checking at the depot at or around 6:00 a.m., completing a pre-trip inspection, then heading out to her route in Plymouth, MI.

---

[1] **§ 395.3**(a) Except as otherwise provided in § 395.1, no motor carrier shall permit or require any driver used by it to drive a property-carrying commercial motor vehicle, nor shall any such driver drive a property-carrying commercial motor vehicle, regardless of the number of motor carriers using the driver's services, unless the driver complies with the following requirements:
(1) Start of work shift. A driver may not drive without first taking 10 consecutive hours off duty;
(2) 14-hour period. A driver may drive only during a period of 14 consecutive hours after coming on duty following 10 consecutive hours off duty. The driver may not drive after the end of the 14-consecutive-hour period without first taking 10 consecutive hours off duty.
(3)Driving time and rest breaks.
*(i)Driving time. A driver may drive a total of 11 hours during the 14-hour period specified in paragraph (a)(2) of this section.*

22.     After completing their route for the day, GLF frequently requested both Plaintiffs assist other drivers in completing their routes.  These routes covered a significant geographic area.

23.     Shortly into their employment with GFL, GFL pressured both Plaintiffs, as well as other drivers, to drive beyond the number of hours allowed for by relevant regulations.

24.     Around the end of fall 2017, Curtis Rowe complained to supervisor Dan Senkbeil about being assigned work beyond the legal hour limits. Senkbeil laughed off Mr. Rowe's complaints and told him to "deal with it." However, Senkbeil informed Mr. Rowe that the period they needed him to drive excessive hours was almost over.

25.     Around the same time, Misty Rowe complained to her supervisor "Billy" that she too was being asked to drive beyond her maximum driving hours.  Billy responded that he knew they were working long hours, but they need the drivers to keep driving over the hours due to workload.

26.     Misty Rowe complained again to her subsequent supervisor, Route Supervisor Nick Allen ("Supervisor Allen") who told Misty Rowe that they needed drivers to drive above the hours because there were driver shortages.

27.     Despite their complaints, Plaintiffs were frequently assigned and pressured to drive beyond the legal limit for hours of service.

28. Mr. Rowe was not comfortable driving in violation of his maximum hours of service, however, he was frequently told by management and other supervisors that he was next in line for a promotion to a route manager position.

29. On November 28, 2018, both Plaintiffs were to assist other drivers upon finishing their routes; GFL requested Curtis assist in Northville, MI and Misty in Canton, MI. Both Plaintiffs took a stand an informed their supervisor that they were unable to assist because doing so would put them above their legal hours of service in violation of 49 C.F.R. §395.3.

30. Specifically, Curtis Rowe informed his supervisor John Cole ("Supervisor Cole") that he was refusing to assist with the Northville route as doing so would put him well beyond his maximum allowed hours of service. Curtis Rowe refueled his vehicle then returned it to the lot. Following the refusal to violate the law, Supervisor Cole texted Curtis Rowe instructing him to come in the following morning at 7:00 a.m. (to meet with the head manager). On November 29, 2018, the day after the complaint, Curtis Rowe was told by GFL District Manager "Sam" that he "needed to be more of a team player" or they're going to be bringing him in early moving forward.

31. Similarly, Misty Rowe told GFL employee Kevin Bishop (who was filling in for her normal supervisor) that she was refusing to cover the route because it would put her above her hour of service. Kevin Bishop became angry and hung up on Misty Rowe. Upon returning to the yard, Misty Rowe was notified that she needed to meet

with the district manager the following morning. At the meeting, Misty Rowe was accused of being insubordinate and not a team player. Misty Rowe explained that she was no longer going to violate hours of service laws at the request of GFL.

32. On or around November 30, 2018, Curtis Rowe met with GFL Safety Director Harold Wiggens ("SD Wiggens") who attempted to persuade Mr. Rowe to doctor his logbooks moving forward. Additionally, SD Wiggens attempted to have Mr. Rowe change his previous driver logs. Mr. Rowe refused and said he would continue to document his actual time. SD Wiggens reiterated that if Mr Rowe would not do as he said then they would be shutting him down early whenever possible.

33. Following these meetings, Plaintiffs' hours were drastically cut well below of the legal limits. However, other drivers continued to have full schedules. The move was retaliatory for their complaints. Indeed, Plaintiffs were the first drivers back in the depot every day.

34. Additionally, all discussion of promoting Curtis Rowe ceased.

35. GFL also retaliated against Plaintiffs in other ways including verbal harassment and complicating their dumping times to make their job more difficult.

36. On or around December 17, 2018, Misty Rowe took FMLA leave for a surgical procedure.

37. On or around January 6, 2019, Misty Rowe was informed that she would be servicing a completely different area upon returning—essentially a different job.

8

Additionally, the GFL exchanged Misty Rowe's previous truck for a much older vehicle. It was Misty Rowe's belief that the moves were further retaliation against her.

38. On January 8, 2019, Misty Rowe spoke with GFL and informed them that she felt they were retaliating against her by switching her route and taking away her newer truck. Ultimately, the decision was made that she should not return to work.

39. On or around January 17, 2019, as is normally done, Supervisor Cole instructed Curtis Rowe to dump his truck at the end of the shift. Curtis agreed. Shortly after, Supervisor Cole called Curtis again and stated that management told him to instruct Curtis to come back and refrain from dumping his truck without explanation. The move was retaliatory as it assured Mr. Rowe would be required to come in much earlier the following day to unload his truck prior to completing his route. Curtis Rowe dumped the truck. On information and belief, all other drivers dumped their truck that night too.

40. On January 18, 2019, Curtis Rowe spoke with Human Resources Director Regina March and notified her that he was subject to ongoing retaliation and had been asked to doctor his logbook by Defendants' Safety Manager. Curtis Rowe was instructed to send the information through email to Ms. March. Curtis submitted the email explaining the retaliation he faced and the other illegal activity on January 20, 2018. ***(Exhibit A)***

41.     On January 21, 2019, Mr. Rowe was called to a meeting with District Manager Sam about the dumping incident which occurred on January 17th. Mr. Rowe again stressed that he was facing retaliation for his refusal to drive above the legal hours. At the meeting Curtis Rowe was terminated.

42.     On March 20, 2019, Plaintiffs timely filed complaints with the Occupational Safety and Health Administration ("OSHA")/Department of Labor ("DOL") pursuant to the STAA.

43.     Plaintiffs file the present lawsuit pursuant to 49 U.S.C. §31105(c) as 210 days have passed since the submission of their OSHA Complaints and the Secretary of Labor has not issued a final decision.

## COUNT I
## VIOLATION OF THE SURFACE TRANSPORTATION ASSISTANCE ACT

44.     All preceding paragraphs are incorporated by reference.

45.     Under the Surface Transportation Assistance Act ('STAA"), it is unlawful for an employer to take an adverse employment action against an employee because the employee engaged in protected activity. 49 U.S.C. § 31105(b)(1). The provisions of the STAA relevant to this charge state:

> (1) A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because-
>
> > (B) the employee refuses to operate a vehicle because-

> (i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety or health;

49 U.S.C. § 31105(a).

46. Employees are protected from retaliatory action by their employer for refusal to operate a commercial vehicle under § 31105(a)(1)(B)(i) (the "actual violation" prong) if operating the vehicle would violate relevant regulations.

47. Under the Actual Violation Prong, and employee is protected for refusing to drive a truck in violation of a regulation, standard, or order of the United States related to commercial motor vehicle safety or health. 49 U.S.C § 31105(a)(1)(B)(i)

48. Plaintiffs are protected under the actual violation prong of the STAA.

49. As discussed above, Plaintiffs refused to drive a vehicle beyond the maximum legal hours in accordance with 49 C.F.R. §395.3.

50. GFL violated the "actual violation" prong of the STAA by creating a hostile work environment, retaliating against, cutting the hours and ultimately forcing the separation of employment for Plaintiffs as a result of their refusal to drive in violation of mandatory rest periods and opposing the ongoing violation at GFL.

51. Plaintiffs are protected under the actual violation prong of the STAA because it was protected activity for Plaintiffs to refuse to drive in violation of regulations related to their hours of service. *See 49 C.F.R. §395.3*.

52. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT II
## VIOLATION OF THE SURFACE TRANSPORTATION ASSISTANCE ACT

53. All preceding paragraphs are incorporated by reference.

54. The regulations implementing the STAA state: "It is a violation for any employer to intimidate, threaten, restrain, coerce, blacklist, discharge, discipline, or in any other manner retaliate against an employee because the employee" engaged in protected activity. 29 C.F.R. § 1978.102(b).

55. GFL retaliated against Plaintiffs by drastically cutting their hours and creating a hostile work environment for them.

56. As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have sustained injuries and damages including, but not limited to, loss of pay, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional

distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a.   Grant them all available compensatory damages for economic injury, including back and front pay, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive damages, liquidated damages, and any other damages available by law;

b.   Grant punitive damages necessary to address Defendants' egregious disregard for Federal and State regulations, as well as the safety of those traveling on our roads;

c.   Plaintiffs' reasonable attorney's fees and costs incurred in this litigation;

d.   Grant any and all violation notice postings available by law pursuant to the statute; and

e.   Grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
Elizabeth A. Gotham (P79058)
SCHULZ GOTHAM PLC

                                                PO Box 44855  
                                                Detroit, MI 48244  
                                                (313) 246-3590  
                                                jackwschulz@gmail.com  
                                                *Attorneys for Plaintiff*

DATE: October 17, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CURTIS ROWE** and
**MISTY ROWE**,

        Plaintiffs,

vs.

Case No.

Hon.

**GFL ENVIRONMENTAL SERVICES USA, INC**
and **GFL ENVIRONMENTAL USA, INC.**,
jointly and severally,

        Defendants.

_____/

  Jack W. Schulz (P78078)
  SCHULZ GOTHAM PLC
  PO Box 44855
  Detroit, MI 48244
  (313) 246-3590
  jackwschulz@gmail.com
  *Attorneys for Plaintiff*
_____/

## **DEMAND FOR TRIAL BY JURY**

    Plaintiffs Curtis Rowe and Misty Rowe hereby demand for a trial by jury.

                        Respectfully submitted,

                        By: /s/ Jack W. Schulz
                        Jack W. Schulz (P78078)
                        SCHULZ GOTHAM PLC
                        PO Box 44855
                        Detroit, MI 48244
                        (313) 246-3590
                        *Attorney for Plaintiff*